IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MERIDIAN LABORATORIES, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 18 C 6007 |
| | ) | |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| ONCOGENERIX USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this diversity case, plaintiff Meridian Laboratories, Inc. ("Meridian") accuses defendant OncoGenerix USA, Inc. ("OncoGenerix"), of breaching a contract to manufacture one of Meridian's products, as well as misappropriating confidential information about the product. OncoGenerix moves for partial summary judgment on all claims arising out of any alleged misappropriation of confidential information. For the following reasons, the Court grants the motion for partial summary judgment.

**BACKGROUND**

The following facts come from the parties' Local Rule 56.1 statements and responses and the associated exhibits. They are either undisputed or presented from the point of view of Meridian, the non-moving party.

Meridian is a drug development company, located in Buffalo Grove, Illinois, and incorporated under Illinois law, which has developed a proprietary formulation of docetaxel, a compound used in chemotherapy to treat various forms of cancer. Meridian claims that its new formulation, which it calls "ML 141," can be delivered in higher doses—and therefore achieves

better treatment outcomes—than previous formulations of docetaxel because it does not use certain stabilizing ingredients that cause serious side effects.

In preparation for bringing ML 141 to market, Meridian approached OncoGenerix, a California corporation with its principal place of business in San Diego, about serving as a contract manufacturing organization. In a series of meetings and communications, OncoGenerix represented that it had the capability to timely and competently manufacture ML 141 for Meridian. On September 26, 2016, Meridian and OncoGenerix entered into a Service Provider Agreement ("SPA"), in which OncoGenerix agreed to perform certain testing and manufacturing services for Meridian. In the course of its performance of its obligations under the SPA, Meridian paid OncoGenerix and, subject to the SPA's confidentiality provisions, disclosed confidential information to OncoGenerix related to the production and commercialization of ML 141.

OncoGenerix failed to timely perform its obligations under the SPA. Meridian wrote to OncoGenerix that it was in breach of contract, but OncoGenerix did not cure the alleged breach. On September 15, 2017, Meridian terminated the SPA. OncoGenerix refused to refund the amounts Meridian had paid, claiming that it was Meridian that had breached the SPA by failing to provide OncoGenerix with sufficient information about ML 141 to enable OncoGenerix to perform its obligations. Because of OncoGenerix's failure to supply ML 141 on the timetable Meridian had anticipated, Meridian missed out on milestone payments that it had expected to receive from a distributor. On August 31, 2018, Meridian filed this lawsuit, claiming breach of contract.

In 2019, Meridian received word from a supplier that OncoGenerix had recently claimed in an email exchange to use a component of ML 141 for "our Docetaxel injection," a "project . . . under development." (Def.'s LR 56.1 Stmt. Ex. 7, ECF No. 116-7 at 11-12.) Junhua Li, a China-based OncoGenerix employee who worked as a "QA Supplier Management Technician," had

started the exchange by sending a January 23, 2019 email to a representative of DavosPharma ("Davos"). Davos is a supplier of sulfobutyl-ether-cyclodextrin, known as "SBECD," which is used in making ML 141. Junhua Li wrote that OncoGenerix was contacting Davos "per [OncoGenerix's] vendor audit program," according to which it "update[s] the expired qualification certificates periodically" for its vendors. (*Id.* at 13.) The Davos representative responded that Davos had no record of ever selling to OncoGenerix, and he asked what OncoGenerix used SBECD for. In reply, Junhua Li mentioned docetaxel, while clarifying that OncoGenerix had not purchased any SBECD yet, but Davos was "approved as per [OncoGenerix's] supplier management procedures," so "[i]f required the above the product [*sic*], [OncoGenerix's] purchasing department [would] definitely contact [Davos]." (*Id.* at 11-12.) The Davos representative forwarded the email to Meridian.

Based on this email exchange, Meridian amended its complaint to assert new claims of misappropriation of confidential information, misappropriation of trade secrets, and fraud, in addition to the original breach of contract claim. The operative Second Amended Complaint consists of six counts: Count I, for breach of contract by failing to provide the services Meridian paid for under the SPA; Count II, for an injunction to prohibit OncoGenerix from using Meridian's confidential information pursuant to section 5.2 of the SPA; Count III, for an injunction pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/3, to prohibit OncoGenerix from using Meridian's trade secrets to commercialize any drug similar to ML 141; Count IV, for breach of contract by misusing Meridian's confidential and proprietary information to develop a drug competing with ML 141; Count V, captioned as "Misappropriation of Trade Secrets," for violating the "confidentiality and non-disclosure provisions" of the SPA by "us[ing] and threaten[ing] to use Meridian's confidential information for its own business purposes in its attempt to develop and

market a competitive drug to ML 141" (2d Am. Compl. ¶¶ 74-76); and Count VI, for fraud by falsely representing that OncoGenerix had the capability to timely perform under the SPA in order to induce Meridian not only to make payments for services it would not receive, but also "to induce Meridian to disclose confidential and proprietary information which OncoGenerix intended to misappropriate to develop its own competing drug" (2d Am. Compl. ¶ 80). Fact discovery is now closed, and OncoGenerix seeks summary judgment on the claims asserted in Counts II through VI.

## ANALYSIS

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam*, 642 F.3d 578, 581 (7th Cir. 2011). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) (internal quotation marks omitted). The court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to competent evidence that would be admissible at trial to demonstrate a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013). In assessing the evidence at summary

judgment, the court must consider the facts in the light most favorable to the non-moving party, giving that party "the benefit of all conflicts in the evidence and reasonable inferences that may be drawn from the evidence," regardless of whether it can "vouch for the objective accuracy of all" of the evidence the non-moving party puts forward. *Fish v. GreatBanc Tr. Co.*, 749 F.3d 671, 674 (7th Cir. 2014).

But even though district courts must view the non-moving party's evidence in this generous light, it does not follow that they are "required to draw every requested inference; they must only draw reasonable ones that are supported by the record." *Omnicare*, 629 F.3d at 704. Evidence that merely invites "speculation," raising "no more than a metaphysical doubt" about the outcome, is not enough to survive summary judgment, *Moser v. Indiana Dep't of Corr.*, 406 F.3d 895, 905 (7th Cir. 2005), nor is evidence that supports only a "hopeful hypothesis." *Beaumont v. J.P. Morgan Chase Bank, N.A.*, 782 F. Supp. 2d 656, 663 (N.D. Ill. 2011) ("The Seventh Circuit 'has long reject[ed] the idea that speculation can be employed as a substitute for proof' in any context, *United States v. Landry,* 257 F.2d 425, 431 (7th Cir. 1958), *In re Cohen,* 507 F.3d 610, 614 (7th Cir. 2007), and time and again has emphasized that when responding to a summary judgment motion it is not sufficient to advance a 'hunch[,]' *Springer v. Durflinger,* 518 F.3d 479, 484 (7th Cir. 2008).") (internal quotation marks altered). Because summary judgment is "the put up or shut up moment in a lawsuit," *Springer*, 518 F.3d at 484, the non-moving party must "flesh out [its] theory with evidence; speculation will not do." *Avery v. Mapco Gas Prod., Inc.*, 18 F.3d 448, 453-54 (7th Cir. 1994); *see Page v. Speedway Superamerica LLC*, No. 306-CV-039, 2007 WL 1138884, at *3 (N.D. Ind. Apr. 16, 2007) ("[Plaintiff's] theory, however theoretically possible, is merely a speculative theory that does not constitute a reasonable inference to survive summary judgment.").

5

OncoGenerix argues that Meridian has not come forward with sufficient evidence to permit a reasonable jury to find that OncoGenerix misappropriated confidential information, misappropriated trade secrets, or committed fraud. Meridian responds that a reasonable juror could find in its favor on those issues based on Davos's email exchange with OncoGenerix. According to Meridian, this email exchange shows that OncoGenerix was using confidential technical information it had obtained from Meridian pursuant to the SPA to develop its own docetaxel injection to compete with ML 141.

But on its face, the email exchange between Davos and OncoGenerix shows only that OncoGenerix contacted Davos as part of a "vendor audit program," pursuant to which OncoGenerix "update[s] the expired qualification certificates [of its vendors] periodically." (Def.'s LR 56.1 Stmt. Ex. 7, ECF No. 116-7 at 13.) OncoGenerix asserts that this was nothing more than a "routine request for re-certification by a supplier," in accord with applicable regulatory and pharmaceutical-industry standards, to clear the way for OncoGenerix to order from Davos if the occasion were ever to present itself. (Def.'s Mem. at 4, ECF No. 115.) Davos's representative stated in the email exchange that Davos had no record of ever selling to OncoGenerix before, and, although the OncoGenerix representatives' responses are challenging to interpret due to their broken English, they seemed to confirm that OncoGenerix had not purchased any SBECD yet, nor was any purchase order imminent; they were merely initiating the re-qualification process as an administrative housekeeping matter based on the "expired qualification certificates" in their records, so that there would be no impediment to any such transaction if one became necessary. Meridian does not set forth any evidence on which to base an interpretation contrary to this common-sense, plain-meaning reading of the email exchange.

6

While it is true that OncoGenerix's representative mentioned "our Docetaxel injection," a "project . . . under development" (Def.'s LR 56.1 Stmt. Ex. 7, ECF No. 116-7 at 11-12), that isolated statement is not enough to support Meridian's claims on its own, given the context in which it was made. This reference to docetaxel occurred in an email exchange arising out of an audit of OncoGenerix's supplier records as a matter of routine administrative hygiene. There is nothing fishy about the fact that OncoGenerix had records of suppliers of SBECD for purposes of making docetaxel, since making docetaxel is exactly what the SPA required it to do. This exchange, by itself, does not suffice to show that OncoGenerix was developing its own docetaxel product to compete with ML 141, when it is "equally possible" that OncoGenerix contacted Davos merely to update its records, and that OncoGenerix's auditors mentioned docetaxel merely because that was what was in its records in relation to Davos and SBECD. *Specialty Earth Scis., LLC v. Carus Corp.*, No. 15-CV-06133, 2021 WL 4804076, at \*26 (N.D. Ill. Oct. 14, 2021). OncoGenerix cites its president's declaration that that it is not in the business of developing new drugs and that it has not used any of Meridian's confidential information to develop any product similar to or competitive with ML 141. Meridian does not cite any other evidence, apart from the Davos/OncoGenerix email exchange, to indicate that OncoGenerix was actually taking steps to develop a docetaxel injection after the termination of the SPA. Without more evidentiary support, the inference that Meridian urges is "not reasonably supported by the record," so the Court "need not accept it." *Overly v. KeyBank Nat. Ass'n*, 662 F.3d 856, 863 (7th Cir. 2011) (mere speculation that defendant had improper motive for its action insufficient to overcome defendant's reasonable explanation supported by evidence at summary judgment) (citing *Omnicare*, 629 F.3d at 704).

The evidence is particularly inadequate to support plaintiff's requested inference for purposes of the fraud claim, to the extent that the fraud claim requires "specific objective proof"—

not just "'circumstantial evidence and inference'"—that OncoGenerix's promises to Meridian were false when made. *Specialty Earth Scis.*, 2021 WL 4804076, at *26 (quoting *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992)). Based only on the Davos/OncoGenerix email exchange, Meridian is reduced to relying on the sort of "circumstantial evidence and inference" that is insufficient to prove fraud. *See Specialty Earth Scis.*, 2021 WL 4804076, at *26.[1]

The bar may be slightly lower with respect to the claims in Counts II through V, *i.e.*, the claims other than fraud, *see Athey Prod. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 435 (7th Cir. 1996) ("speculation, possibilities, and reasonable explanations for [defendant's] conduct do not satisfy [plaintiff's] burden of showing fraud by *clear and convincing evidence*") (emphasis added), but plaintiff is unable to clear even this lower bar, without more than the Davos/OncoGenerix emails. A reasonable juror could not fairly interpret this email exchange to prove that OncoGenerix was misusing confidential information to develop a competing docetaxel product. As an initial matter, it is not even clear what confidential information Meridian is accusing OncoGenerix of misusing. OncoGenerix asserts that there is nothing confidential about Davos's identity as a supplier of SBECD, as Davos is well-known as such within the industry, and plaintiff does not contradict this assertion. Plaintiff appears to suggest, instead, that given the SPA's "thorough and extensive description of the business and technical activity necessary to bring ML 141 to market,"

---

[1] The Court explained in its opinion denying OncoGenerix's Rule 12(b)(6) motion to dismiss that Meridian stated a claim of fraud, including a fraudulent "scheme" amounting to more than a broken promise, as Illinois law requires, based significantly on two allegations: (a) another contract manufacturing organization had been able to produce ML 141 promptly, without any of the problems OncoGenerix had cited, and (b) a third party had indicated to Meridian that OncoGenerix was attempting to develop a competing docetaxel product. (Mem. Op. & Order at 12-13, ECF No. 87.) Although Meridian has had the opportunity to engage in discovery, it has not substantiated either of these key allegations: it cites no evidence whatsoever of another contract manufacturing organization being able to do what OncoGenerix could not, and, as the Court has explained, the evidence obtained from the third party (Davos) is insufficient to support the requested inference.

8

any docetaxel injection OncoGenerix were to develop would misuse some of OncoGenerix's confidential information. (Pl.'s Resp. Br. at 6, ECF No. 122.) Even if the Court assumes that to be true, the above discussion shows that the requested inference that OncoGenerix is developing a docetaxel product to compete with ML 141 is not a reasonable one, based only on the Davos/OncoGenerix email exchange. As pleaded in the Second Amended Complaint, all of the claims in Counts II through VI depend on that inference; that is, they all depend on proving the allegation that OncoGenerix misused confidential information to develop a docetaxel product to compete with ML 141.[2] As the Court has explained, Meridian has not come forward with evidence sufficient to prove that allegation without requiring the jury to rely on speculation. *See Overly*, 662 F.3d at 863. At the summary judgment stage, Meridian is required to do more. Because no reasonable juror could find in plaintiff's favor on the claims in Counts II through VI, the Court grants defendant's motion for summary judgment on those claims.

## **CONCLUSION**

Defendant's motion for summary judgment on Counts II through VI of the Second Amended Complaint [114] is granted. The Court sets a status hearing for February 17, 2022, to discuss next steps on the remaining breach of contract claim. The parties shall file a joint status report by February 14, 2022.

---

[2] Meridian does not make claim-by-claim arguments in its response brief, instead lumping all of its claims together. Although Meridian does not raise the issue, the Court notes that the prospective nature of the injunctive remedy Meridian seeks in Counts II and III does not alter its burden of proof. *See Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 867 (7th Cir. 2018) ("Permanent injunctive relief is appropriate when a plaintiff has shown: '(1) *success[, as opposed to a likelihood of success,] on the merits*; (2) irreparable harm; (3) that the benefits of granting the injunction outweigh the injury to the defendant; and, (4) that the public interest will not be harmed by the relief requested.'") (quoting *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012)) (emphasis added).

9

**SO ORDERED.**                                              **ENTERED:   January 14, 2022**

 

 

_____
**JORGE L. ALONSO**
**United States District Judge**